**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS,
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **OLIVIA OLIVAREZ** § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | **CIVIL ACTION NO.5:19-CV-1250** |
| § | | |
| **CONSTELLATION BRANDS, INC.** § | | |
| *Defendant.* § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Plaintiff **OLIVIA OLIVAREZ**, and files this Plaintiff's Original Complaint and Jury Demand, complaining of **CONSTELLATION BRANDS, INC.**, hereinafter referred to as "Defendant" or "Constellation", and would respectfully show unto the Court as follows:

**I.
PARTIES**

1. Plaintiff, **OLIVIA OLIVAREZ**, is a natural person who resides in San Antonio in the State of Texas, within the Western District of Texas, San Antonio Division.

2. Defendant **CONSTELLATION BRANDS, INC.**, is a foreign for-profit corporation doing business in San Antonio, Texas, which is in the Western District of Texas, San Antonio Division. Defendant may be served by certified mail, return receipt to its registered agent, CT Corporation System, 701 Brazos St., Ste. 720, Austin, Texas 78701. A request for waiver of summons will first be issued.

**II.
VENUE**

3. Plaintiff's claims arise under federal statute and state law. This Court has jurisdiction over

the claim because Plaintiff has asserted a claim arising under federal law, Title VII of the Civil Rights Act of 1964, as amended, codified under Title 42 U.S.C. Section 2000e *et. seq.*, and pursuant to supplemental jurisdiction under Chapter 21 of the Texas Labor Code.

4. This Court has jurisdiction to hear the merits of Plaintiff's claims due to the federal question raised pursuant to the federal statutes cited above. Plaintiff brings claims under federal and state law.

5. Venue is proper in the Western District of Texas, San Antonio Division, because the events or omissions forming the basis of the suit occurred in this District. Venue is proper in this Court in that the Defendant conducts business within the division.

6. As of the time of filing, damages are within the jurisdictional limits of the court.

7. All claims are brought under federal statute and state law.

## III.
## JURY DEMAND

8. Plaintiff hereby tenders payment for and demand for trial by jury

## IV.
## MISNOMER / MISIDENTIFICATION

9. In the event that any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## V.
## BACKGROUND FACTS

10. It is against federal law and Defendant's policy to treat employees less favorably because of their sex, race, or ethnicity. Human Resources should investigate claims of

2

discrimination and protect employees from retaliation. It is further against federal law and Defendant's policy to target and terminate an employee for making a protected complaint of discrimination based on sex, race, or any other protected class. Defendant terminated Ms. Olivia Olivarez within a few weeks of complaints to her immediate supervisor, Maria Brozost, and Human Resources manager, Michele Yarton, that she was being discriminated against because of her sex, race, and ethnicity.

11. Defendant hired Ms. Olivarez in December 2014 as Information Technology Business Operations Process Manager.

12. Ms. Olivarez is a Hispanic female and is openly gay.

13. Beginning on or about December 2016, Defendant began a pattern and practice of bypassing Ms. Olivarez for assignments and projects. Brozost began replacing Ms. Olivarez as project manager and instead assigned projects to three less qualified male employees with less time with the company.

14. Ms. Olivarez's male counterparts were recognized and rewarded for their work on the projects assigned by Brozost. The three male employees were also subsequently promoted to positions with better pay.

15. Ms. Olivarez was further excluded from team meetings, which kept her from advancing in responsibilities, bonuses, and pay.

16. In early 2017, Ms. Olivarez complained about sex discrimination to her direct supervisor, Maria Brozost. However, nothing was done about Ms. Olivarez's reports of discrimination.

17. On or about March 2017, Ms. Olivarez again complained to Brozost about the disparate treatment she experienced compared to the three male counterparts. Brozost scolded Ms. Olivarez for being "too aggressive".

18. On or about May 2017, Ms. Olivarez again complained to Brozost about being excluded from projects and assignments in comparison to the male employees in the department. Nothing was done in response to Ms. Olivarez's renewed reports of the discrimination.

19. On or about July 2017, Ms. Olivarez again complained to Brozost about sex discrimination. Brozost asserted it was her prerogative to assign tasks to whichever employees she chose. In response to Ms. Olivarez's complaint, Brozost told Ms. Olivarez she sounded like "an alarmist".

20. In addition to sex discrimination, Ms. Olivarez was also subjected to discrimination based on her race and ethnicity. Throughout 2017 and 2018, Ms. Olivarez frequently traveled to Mexico for company business on flights chartered by Defendant.

21. On several occasions during the chartered flights, Defendant's contracted pilot, Patrick Lyndon Nugent, subjected Ms. Olivarez to racial comments such as, "You know how those Mexicans are," and "them Mexicans are all the same".

22. On one occasion in August 2017, Defendant's contracted pilot, Nugent, asked to see Ms. Olivarez's passport. Nugent asked, "Why don't you have a bunch of last names like them other Mexicans." Ms. Olivarez informed the pilot that she only has one last name and that she is an American citizen.

23. Defendant's contracted pilot, Nugent, continued to address Ms. Olivarez in a rude and disrespectful manner, which humiliated Ms. Olivarez in front of other employees.

4

24. On or about August 2017, Ms. Olivarez reported the race and sex discrimination via email to Human Resources manager, Michele Yarton.

25. In response to the complaint, Yarton contacted Ms. Olivarez by phone and proposed a meeting with the pilot, Nugent. Because Nugent was rude and disrespectful on the chartered flights and he previously embarrassed Ms. Olivarez, she declined the meeting and respectfully requested that Yarton address her complaint in a manner other than a face-to-face meeting with the offender. Yarton did nothing further.

26. Additionally, on or about August 2017, Ms. Olivarez casually remarked to Brozost that she had proposed to her girlfriend, another woman. Brozost had not previously known that Ms. Olivarez is gay.

27. Immediately following Ms. Olivarez's notice that she was in a same-sex relationship, Defendant began canceling regular one-on-one meetings with Ms. Olivarez. The meetings supplied feedback for employees which, in turn, impacted an employee's potential for annual bonuses.

28. For the remainder of 2017, instead of meeting with Ms. Olivarez for the regular one-on-one meetings, Brozost advised her to reach out to the other male employees. The male employees disregarded Ms. Olivarez and she was provided no further guidance nor feedback as to her job performance.

29. Then, in May 2018, after Defendant continuously excluded Ms. Olivarez from projects that led to the promotion of three male employees, Ms. Olivarez again complained to Brozost about the race and sex discrimination. Brozost again brushed off Ms. Olivarez's complaints.

5

30. Throughout 2018 and early 2019, Defendant subjected Ms. Olivarez to a hostile work environment by ignoring her complaints of discrimination, excluding her from projects and assignments that ultimately lead to promotion and pay increases for non-Hispanic, male employees, and allowing a contractor to make racially motivated comments to humiliate her.

31. Finally, on March 4, 2019, Ms. Olivarez was summoned to a video call meeting via Skype. Ms. Olivarez's supervisor, Brozost, and Human Resources manager, Yarton, were present for the video call. During the call, Brozost told Ms. Olivarez that her role was eliminated and that she was terminated. When Ms. Olivarez inquired about other positions within the company, despite Ms. Olivarez being qualified for other positions, Yarton informed her there were no other 'suitable' positions available.

32. After subjecting Ms. Olivarez to a pattern and practice of discrimination and a hostile work environment for making protected complaints about sex, race, and ethnicity discrimination, Defendant retaliated against Ms. Olivarez by excluding her from assignments and projects that lead to increases in pay and bonus, failing to promote, and ultimately, terminating her.

## VI.
## DISCRIMINATION, RETIALIATION AND WRONGFUL TERMINATION BASED ON RACE & SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 and THE TEX. LABOR CODE § 21.051, *et seq*.

33. Prior to her termination, Plaintiff faithfully served Defendant in her capacity as employee and faithfully performed all duties expected of her. The acts committed by the agents, servants and/or employees of the Defendant in discriminating against and wrongfully terminating Plaintiff based on her race and sex and based on the complaints made by her of race and sex discrimination all constitute violations of Title VII of the Civil Rights Act

6

of 1964 and the Tex. Labor Code § 21.051, et seq., including §§ 21.051, 21.101, 21.125, and any other applicable provisions.

34. As a result of Defendant's discrimination and unlawful retaliatory actions, the Plaintiff has suffered, and will continue to suffer actual damages in the form of lost wages, past and future, and lost employment benefits.

35. Others outside of Plaintiff's protected class were not treated similarly, being treated more favorably than Plaintiff.

## VII.
## DISCRIMINATION BASED ON RACE & SEX UNDER TEXAS LAW

36. The evidence will demonstrate:

    a. Plaintiff Olivarez belongs to a protected class based on race and sex;

    b. Plaintiff Olivarez was qualified for her position;

    c. Plaintiff Olivarez was subject to adverse employment action(s); and

    d. There is an inference of race and sex discrimination, including that Ms. Olivarez was treated less favorably than similarly situated employees outside of her protected class and/or was replaced by someone outside her protected class.

## VIII.
## RETALIATION BASED ON RACE & SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 and THE TEXAS LABOR CODE § 21.051, et seq.

37. The evidence will demonstrate:

    a. Plaintiff engaged in a protected activity (including, but not limited to, making complaints of, participating in, and opposing discrimination);

    b. Plaintiff was subjected to adverse employment action(s); and

7

    c. There is a causal connection between the protected activity and Defendant's adverse action.

38. Prior to her termination, Plaintiff faithfully served Defendant in her capacity as an employee and faithfully performed all duties expected of her. The acts committed by the agents, servants, and/or employees of Defendant in retaliating against Plaintiff Olivarez based on her opposition to race and sex discrimination by her manager constitutes violations of Title VII of the Civil Rights Act of 1964 and the Texas Labor Code § 21.051, et. seq.

39. Plaintiff opposition to race and sex discrimination led to Plaintiff's termination.

40. Plaintiff complaints to her immediate supervisor, Brozost, and Human Resources manager, Michele Yarton, resulted in retaliation and her wrongful termination.

41. Plaintiff herein contends Defendant generally violated the spirit and intent of the Labor Code in that Defendant retaliated against Plaintiff and wrongfully terminated Plaintiff after her complaints of race and sex discrimination and retaliation, opposition to discrimination and participation in the complaint process.

**42.** The evidence will also show that Defendant's reason for taking adverse employment actions against Plaintiff's employment are pretextual.

**43.** As a result of Defendant's unlawful race and sex discrimination, Ms. Olivarez has suffered compensatory damages by reason of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

**44.** Defendant's alleged non-discriminatory, legitimate reason for terminating Plaintiff lacks credence.

## IX.

## **RESPONDEAT SUPERIOR**

45. Employees involved in the discrimination described herein were at all times employees, agents, or representatives of the Defendant company and were at all times acting in the course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of Respondeat Superior.

## X.
## **DAMAGES**

46. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

   a. All reasonable and necessary Attorneys' fees incurred by or on behalf of Plaintiff;

   b. Back pay from the date that Plaintiff was terminated and interest on the back pay in an amount sufficient to compensate Plaintiff as the Court deems equitable;

   c. Pecuniary losses;

   d. All reasonable and necessary costs incurred in pursuit of this suit;

   e. Expert fees as the Court deems appropriate;

   f. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

   g. Pre and Post judgment interest as allowed by law and punitive damages;

   h. Mental anguish in the past;

   i. Mental anguish in the future; and

   j. Loss of benefits, promotional opportunities, and job status.

## XI.
## **ADMINISTRATIVE FILINGS**

47. Plaintiff dually filed her original verified complaint with the EEOC and the TWCCRD.

Thereafter, Plaintiff received a "Notice of Suit" from the EEOC, giving Plaintiff notice of her right to sue Defendant within 90 days of its receipt. Plaintiff timely files her lawsuit.

48. Both the 180 day and the 300 day periods of time have passed since the filing of her TWCCRD and EEOC charges.

## XII.
## ATTORNEY FEES

49. Defendant's conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining counsel. Therefore, Plaintiff seeks all reasonable and necessary attorney fees authorized under Title VII and the Texas Labor Code in this case which would include at least the following:

    a. Preparation and trial of the claim, in an amount the jury deems reasonable;

    b. Post-trial, pre-appeal legal services, in an amount the jury deems reasonable; and

    c. An appeal to the Court of Appeals, in an amount the jury deems reasonable; and

    d. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## XIII.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear and answer herein; that upon a final hearing hereof, a judgment be rendered for Plaintiff for damages set out above in an amount the jury deems reasonable under the circumstances, along with costs of court, and both post and prejudgment interest as allowed by law, attorneys' fees and for such other and further relief to which Plaintiff may be justly entitled.

        **Respectfully Submitted,**

        **PONCIO LAW OFFICES**
        **A Professional Corporation**
        **5410 Fredericksburg Road, Suite 109**
        **San Antonio, Texas 78229-3550**
        **Telephone:(210) 212-7979**
        **Facsimile:(210) 212-5880**

        **BY:**   *Lorna R. Griffin*

            **ADAM PONCIO**
            STATE BAR NO. 16109800
            **ALAN BRAUN**
            STATE BAR NO. 24054488
            **LORNA R. GRIFFIN**
            STATE BAR NO. 24109947

            **ATTORNEYS FOR PLAINTIFF**

12